# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 8486 | **DATE** | 6/30/2004 |
| **CASE TITLE** | ANGEL L. CASTRO vs. TOTAL HOME HEALTH, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing held and continued to 8/16/2004 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] All dispositive motions to be filed on or before 8/26/04. ENTER MEMORANDUM OPINION AND ORDER: Defendants' motion to dismiss [doc. no. 5-1] is granted without prejudice as to Counts V and VI and denied as to Count VIII. Defendant withdraws motion to compel plaintiff to comply with F.R.C.P. 33 and 34 and to pay costs associated with this motion as sanctions; the referral of motion to compel to Magistrate Judge Ashman is withdrawn. Defendants' motion for leave to amend answer to plaintiff's complaint is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 0 9 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | | 17 |
| | Mail AO 450 form. | 2004 JUL -8 PM 5:46 | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |

date mailed notice

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANGEL L. CASTRO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 03 C 8486 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| TOTAL HOME HEALTH, INC., ) | |
| CAROLYN KIRK-LIKOU, ) | **DOCKETED** |
| ALAN P. KIRK, ) | JUL 0 9 2004 |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Angel L. Castro has sued Defendants Total Home Health, Inc. ("Total"), Carolyn Kirk-Likou ("Likou") and Alan P. Kirk ("Kirk") in an eight-count complaint alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* (Counts I and II); wage discrimination in violation of the Equal Pay Act, 29 U.S.C. § 206(d) (Counts III and IV); as well as state law claims of slander *per se* (Counts V and VI); intentional infliction of emotional distress (Count VII); and interference with a business relationship (Count VIII). Defendants have moved to dismiss Counts V, VI and VIII for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons set forth below, the motion is granted in part and denied in part.

1

17

## FACTS

The following facts alleged in the Complaint are assumed to be true for the purpose of this motion to dismiss. *N. Tr. Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995). Defendant Total is in the business of collecting medical bills. (Compl. ¶ 2.) Likou is employed by Total as Director of Billing and owns the company with her husband. (*Id.* ¶ 4). Kirk, Likou's son, is also employed by Total as the Director of Operations. (*Id.* ¶ 5.) Castro was employed by Total as a collector in its billing department from April 18, 2000 to January 28, 2003. (*Id.* ¶¶ 1, 11.) Castro began at a wage of $14.00 per hour, with a $150.00 bonus paid to him each two-week pay period. (*Id.* ¶ 12.) After a year at Total, Castro's job title was changed to Collector/Biller, but he did not receive a raise. (*Id.* ¶¶ 17, 19.) Castro alleges that other employees in the billing department were given raises on their first anniversary of employment and that it was Total's custom and practice to review each employee annually. (*Id.* ¶¶ 16, 18.)

On Castro's second anniversary of employment, his job title was changed to Director of Patients Accounts, although his duties did not differ from his duties when his title was Collector/Biller. (*Id.* ¶ 20.) Also on Castro's second anniversary, his twice-monthly $150.00 bonus was taken away, while his hourly salary was increased to $16.50 per hour. (*Id.* ¶ 21.) These wage changes resulted in a net raise of $0.50 per hour. (*Id.*) Castro alleges that this pay raise was disproportiontely low to that of his fellow employees. (*Id.* ¶ 23.) Castro complained about this difference to Defendants multiple times. (*Id.* ¶ 24.)

During Castro's time at Total, Likou was made Director of Billing. (*Id.* ¶ 26.) Castro alleges that after this change in management he was "treated less favorably than the other employees in the

2

department." (*Id.* ¶ 27.) Castro alleges the following unfair treatment: Likou allowed female employee greater flexibility with days off; was more understanding with their tardiness; "pressured them less than the Plaintiff"; and allowed the women in the department to attend women's business meetings, while still being paid, yet did not allow Castro to represent Total in a Hispanic Festival. (*Id.* ¶¶ 30-32, 37.)

Additionally, Likou allegedly would shred resumes of male applicants and did not interview or hire any males for the billing department. (*Id.* ¶ 32.) Likou is also alleged to have made negative comments about males, such as "men are no good; women are the only ones who can run companies correctly." (*Id.* ¶ 28.) Another billing department employee, Betty Stayton, who is Likou's sister, allegedly stated on more than one occasion that "[m]ales are only good for one thing." (*Id.* ¶ 29.) Finally, Castro claims that he was told to "watch his back" and that Likou wanted to fire him in such a way that Total would not have to pay him unemployment compensation. (*Id.* ¶ 33.)

On January 24, 2003, Castro was called into a meeting with Kirk and Likou. (*Id.* ¶ 34.) At that meeting he was informed he was under investigation for sexual harassment that had occurred that day and was told to leave the premises. (*Id.* ¶ 35.) Castro alleges that beyond the identification of the accuser, no details of the nature or extent of the alleged sexual harassment was discussed. (*Id.* ¶¶ 41-42.) He also maintains he never was given the opportunity to answer any of the specific or general allegations of sexual harassment. (*Id.* ¶ 45.) Castro asserts he never engaged in any conduct "that can honestly be construed as sexual harassment with any of the employees at Defendant Total." (*Id.* ¶ 46.)

After the meeting, he was escorted from the premises and given a written note recounting the information presented to him in the meeting. (*Id.* ¶¶ 35-36.) On January 28, 2003, Castro was informed in writing that his employment with Total was terminated because Likou and Kirk concluded that he had "a pattern of inappropriate behavior toward women." (*Id.* ¶ 39.) Total does not have a written policy for investigating sexual harassment charges. (*Id.* ¶ 43.) When investigating the sexual harassment charges against Castro, Total did not employ a consultant. (*Id.* ¶ 44.)

After his termination, Castro learned that other employees in the billing department had been made to sign statements written by Likou and Kirk. (*Id.* ¶ 47.) Castro obtained nine of these statements through the Illinois Department of Employment Security, to which Total had submitted them in support of its objection to Castro's claim for unemployment compensation. (*Id.* ¶ 49.) One of the statements was dated January 29, 2003 and two were dated January 28, 2003. (*Id.* ¶ 51.)

These statements alleged Castro had sexually harassed his colleagues by the use of terms of endearment such as "baby, honey and sweetie." (*Id.* ¶ 48.) Castro alleges these terms were used with "great frequency" by most of the employees in the department. (*Id.*) Castro alleges that the statements are not entirely accurate and that Likou and Kirk knew the statements were untrue. (*Id.* ¶¶ 52, 53.) Additionally, Castro alleges that the conduct detailed in the statements could not reasonably be construed to constitute sexual harassment. (*Id.* ¶ 55.)

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on February 26, 2003. (*Id.* ¶¶ 9, 10.) Plaintiff received notice of his right to sue from the EEOC on August 28, 2003, and he filed the present Complaint on November 24, 2003. (*Id.*) In Count V of his Complaint, Castro alleges that Total's statements regarding his sexual harassment of fellow

4

employees are slanderous *per se*. Castro alleges that the Defendants' statements of sexual harassment injured him in his profession and exposed him to "public hatred, contempt, ridicule, aversion, disgrace or induced an evil opinion of him in the minds of others." (*Id.* ¶ 79.) Castro claims that the statements were false and that Likou and Kirk made them either with knowledge of their falsehood or with a "reckless disregard for the truth or falsity and rights of the Plaintiff" and that these statements damaged and will damage him. (*Id.* ¶¶ 81-82.) Count VI of the Complaint also alleges slander *per se*, but adds the assertion that Likou and Kirk acted willfully and wantonly and seeks punitive damages. (*Id.* ¶ 84.)

Count VIII of Castro's Complaint alleges that Likou and Kirk's conduct "constitutes an unlawful and intentional interference with Castro's business relationship of employment with Total" which resulted in damages to Castro. (*Id.* ¶¶ 92-93.)

## DISCUSSION

A claim may be dismissed under Rule 12(b)(6) only if the nonmoving party can prove no set of facts consistent with its complaint or counterclaim that would entitle it to relief. *N. Tr. Co.*, 69 F.3d at 129. In ruling on a motion to dismiss, all well-pleaded facts are taken as true, and the only facts available to the Court are those presented in the Complaint. *Coates v. Ill. St. Bd. of Educ.*, 559 F.2d 445, 447 (7th Cir. 1977). All reasonable inferences must be drawn in favor of the nonmoving party. *N. Tr. Co.*, 69 F.3d at 129.

I.  **Slander *Per Se* (Counts V and VI)**

Defendants argue that because the sexual harassment allegations do not impute a lack of ability of the Plaintiff's to perform his job, they do not fall into any of the available categories of slander *per se*, and therefore Counts V and VI must be dismissed. The Court agrees.

While under common law, slander referred to the spoken word, and libel referred to the written word, this distinction is now moot in Illinois. and the same standard is applied whether spoken or written words are at issue. *Medow v. Flavin*, 782 N.E.2d 733, 741 (Ill. App. Ct. 2003). For a statement to be defamatory, three elements are required: (1) a false statement by the defendant about the plaintiff; (2) an unprivileged publication to a third party; and (3) damage to the plaintiff. *Id.*

If statements are defamatory *per se*, the plaintiff does not need to plead and prove actual malice by the defendant. *Muthuswamy v. Burke*, 646 N.E.2d 616, 619 (Ill. App. Ct. 1995). Language is defamatory *per se* if it is "so obviously and naturally harmful to the person to whom it refers that a showing of special damages is unnecessary."[1] *Id.* at 618.

Illinois recognizes several categories of statements that are slanderous *per se*: (1) words that impute the commission of a crime; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or a want of integrity in the discharge of duties

---

[1] In contrast, an action for slander *per quod* requires proof of special damages. *Thomas v. Fuerst*, 803 N.E.2d 619, 624 (Ill. App. Ct. 2004).

of office or employment; or (4) words that prejudice a party, or impute lack of ability in his or her trade, profession or business.[2] *Id.* at 619.

Defendants contend that the alleged defamatory statements are not slanderous *per se* because they do not impute Plaintiff's lack of ability as a Collector/Debtor and therefore do not fit into any of the slander *per se* categories. An employer's statements regarding an employee's relationships with other employees do not address a plaintiff's ability in his or her profession. *See Powers v. Delnor Hosp.*, 499 N.E.2d 666, 668 (Ill. App. Ct. 1986); *Heying v. Simonaitis*, 466 N.E.2d 1137, 1143 (Ill. App. Ct. 1984). The Court disagrees with Plaintiff's contention that the cases cited by Defendants are factually distinguishable. The relevant inquiry in each case was whether the statements at issue addressed the Plaintiff's ability to do his or her job. *See Muthuswamy*, 646 N.E.2d at 619 ("[N]one of the statements directly or inferentially call into question plaintiff's abilities as a physician . . . ."); *Powers*, 499 N.E.2d at 668 ("In the present case, [the disputed statement] is nonactionable *per se*...because it is directed to plaintiff's relationship with her co-workers and does not pertain to her knowledge and ability to care for patients as a nurse."); *Heying*, 466 N.E.2d at 1143 ("At no time did either of the defendant physicians impugn plaintiff's ability as a nurse.").

---

[2] The common law slander *per se* classifications have been enlarged by the Slander and Libel Act, 740 ILL. COMP. STAT. 145/1 *et seq.*, to include false allegations of fornication and adultery. *See Bryson v. News Am. Pubs., Inc.*, 672 N.E.2d 1207, 1214 (Ill. 1996).

Slander *per quod* may exist "(1) where the defamatory character of the statement is not apparent on its face and resort to extrinsic circumstances is necessary to demonstrate its injurious meaning; and (2) where the statement is defamatory on its face, but does not fall within one of the limited categories of statements that are actionable *per se*." *Thomas v. Fuerst*, 803 N.E.2d 619, 624 (Ill. App. 2004). The Complaint, however, does not allege slander *per quod* and instead specifically alleges slander *per se*.

7

Here, Plaintiff alleges that "statements...that Plaintiff had committed sexual harassment[]" constitute slander *per se*. Plaintiff therefore has limited himself to allegations that do not refer to his ability as a Collector/Biller and has pleaded himself out of a claim of slander *per se*. Plaintiff's reliance on *Russo v. Nike, Inc.*, No. 99 C 2726, 2000 WL 347777 (N.D. Ill. Mar. 28, 2000), is misplaced. First, in *Russo,* the plaintiff did not allege defamation *per se*. Rather, the plaintiff appears to have pleaded defamation *per quod*, and the court does not discuss the requirements of defamation *per se*. *See id.* at *4-5.

Plaintiff further argues that Counts V and VI should not be dismissed because, as in *Russo*, he should be allowed to use discovery to determine what occurred during Total's investigation of the sexual harassment claims. However, unlike the present case, the plaintiff in *Russo* was found to have alleged defamation sufficiently in the first place. *See id.* at *5. Defendants' motion to dismiss Count V and VII of Plaintiff's Complaint is granted without prejudice.

## II. <u>Tortious Interference with a Prospective Business Relationship (Count VIII)</u>

Defendants[3] argue that Plaintiff fails to state a claim for tortious interference with a prospective business relationship because Total was not a third party to Defendants. The elements of intentional interference with a prospective business advantage are: (1) a reasonable expectation of continued employment on behalf of the plaintiff; (2) the defendant's knowledge of this expectancy; (3) interference by the defendant for the purpose of defeating this expectancy; and (4)

---

[3] While Castro has sued all Defendants under Title VII, the Equal Pay Act and under the common law slander claim, Castro has sued only Likou and Kirk for tortious interference with a prospective business relationship.

8

damages to the plaintiff resulting from the interference. *Vickers v. Abbott Labs.*, 719 N.E.2d 1101, 1116 (Ill. App. Ct. 1999).

Defendants argue that, as employees of Total, they may not be held liable for wrongful interference with Plaintiff's business relationship with Total because they were acting on behalf of Total, and a corporate employee generally will not be held liable for interference when he is acting in the employer's interests. *See Muthuswamy,* 646 N.E.2d at 620. However, corporate officers do not enjoy a qualified privilege for their actions when they "act *solely* for their own gain or *solely* for the purpose of harming plaintiff since such conduct is not undertaken to further the corporation's interest." *Mittelman v. Witous*, 552 N.E.2d 973, 987 (Ill. 1989), *abrogated on other grounds by Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 619 N.E.2d 129 (Ill. 1993) (emphasis in original).

Although, as Defendants point out, Plaintiff does not directly state that the individual defendants acted in their own best interest, this Court disagrees with their contention that "no fair reading of Plaintiff's Complaint would allow for an interference claim." (Defs.' Reply Supp. Mot Dismiss at 4.) Instead, Defendants' self-interest may be inferred from the allegations in the Complaint. *See id.* 987.

Plaintiff could prove that it was not in the best interests of Total for Defendants to provide false information to the EEOC and the Unemployment Commission. In addition, Plaintiff alleges that Defendants interfered with Castro's employment in the hopes of firing him "with cause" to avoid paying unemployment compensation, that Plaintiff was told to "watch his back," and that the sexual harassment investigation was improper. Viewing these allegations in the light most favorable

to Plaintiff, as this Court must, Plaintiff could prove a set of facts demonstrating that Defendants acted solely for their own gain or solely for the purpose of harming Plaintiff.

Moreover, the Complaint sufficiently alleges the necessary elements of a tortious interference claim. First, the Complaint may be read to allege that Castro had a reasonable business expectancy that his employment with Total would continue and that Defendants were aware of Castro's expectations. *See Grund v. Donegan*, 700 N.E.2d 157, 160 (Ill. App. Ct. 1998) (holding that an at-will relationship will presumptively continue as long as the parties are satisfied and, therefore, is sufficient to support a claim for tortious interference); *see also Kemper v. Worcester*, 435 N.E.2d 827, 831 (Ill. App. Ct. 1982) ("The relationship or agreement need not be enforceable by plaintiff as a contract; rather, it is the interference with the relation which creates the actionable tort.")

Second, Plaintiff has sufficiently alleged that Likou and Kirk acted in an unjustified and malicious manner. *See Mittelman*, 552 N.E.2d at 987; *see also Small v. Sussman*, 713 N.E.2d 1216, 1223 (Ill. App. Ct. 1999) ("[For this tort], 'malicious' means intentional and without justification."). Finally, Castro has alleged he was damaged by the Defendants' interference.

Therefore, Plaintiff has pleaded a claim of tortious interference with a prospective business advantage. Defendants' motion to dismiss is denied as to Count VIII.

## CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss [doc. no. 5-1] is granted without prejudice as to Counts V and VI and denied as to Count VIII.

**SO ORDERED**  **ENTERED:** 6/30/04

*Ronald A. Guzman*
**HON. RONALD A. GUZMAN**
**United States Judge**