IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGEL L. CASTRO, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TOTAL HOME HEALTHCARE, INC., )<br>CAROLYN KIRK-LIKOU and )<br>ALAN P. KIRK, )<br>)<br>Defendants. ) | No. 03 C 8486<br><br>Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

Angel Castro has sued Total Home Healthcare, Inc. ("Total"), Carolyn Kirk-Likou ("Likou") and Alan Kirk for their alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Equal Pay Act, 29 U.S.C. § 216, and various state laws. The case is before the Court on defendants' Federal Rule of Civil Procedure ("Rule") 56(c) motion for summary judgment. For the reasons set forth below, the Court grants the motion as to the federal claims and declines to exercise supplemental jurisdiction over the state-law claims.

### Facts

Plaintiff failed to file any response to defendants' Local Rule 56.1(a) Statement of Uncontested Material Facts. That omission is costly. According to the Local Rule, "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." N.D. ILL. LR 56.1(b)(3)(B); *see Koszola v. Bd. of Educ. of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004) ("We have emphasized the importance

of local rules and have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment.") (alteration and citation omitted). By failing to respond to defendants' LR 56.1(a) Statement, plaintiff has admitted all of the properly supported facts set forth in it. Therefore, the following is drawn largely from defendants' statement of facts.

Plaintiff, Angel Castro, is a forty-six year old, Hispanic man. (Def.'s LR 56.1(a) Stmt. ¶ 4; Compl. ¶ 1.) Total hired Castro in April 2000 to collect accounts receivable. (Def.'s LR 56.1(a) Stmt. ¶¶ 8-9.) At the time, Castro was the only employee working on collections. (Id. ¶ 11.) Shortly after being hired, Castro sought and received a pay increase, which made him the highest paid, non-managerial employee in the billing/collections department. (Id. ¶¶ 14, 17.)

In April 2001, Castro was moved into the position of billing specialist/collections. (Id. ¶ 27.) This position required him to continue to work on collections and to bill first, second and third-party payers for services rendered. (Id. ¶¶ 27-28.)

In April 2002, defendants increased Castro's pay and gave him a new title, Director of Private Insurance, but his job duties remained the same. (Id. ¶¶ 29, 35-37.)

During his employment with defendants, Castro was disciplined for a variety of improper conduct. On August 22, 2001, he received a written warning for rude behavior with a referral source. (Id. ¶ 25.) In April 2002, he received two warnings for failure to verify private insurance. (Id. ¶¶ 41, 43.) In May and June 2002, he received warnings for being late to work and, on September 13, 2002, he was put on probation for tardiness. (Id. ¶¶ 48, 50-51, 55-56.)

Throughout Castro's employment, defendants had an anti-harassment policy in place. (Id. ¶ 84.) Though Castro was aware of the policy, he still used terms like "baby," "honey," "doll" and "sweetie" with his female co-workers. (Id. ¶¶ 84-86.) In November 2002, female employees

2

complained to Likou about Castro's use of those terms, and Likou warned Castro not to use such language. (*Id.* ¶¶ 88-90.) On December 23, 2002, Likou overheard Castro using inappropriate language and gave him a written warning about his language and his use of sexually suggestive gestures. (*Id.* ¶¶ 91-93.)

On January 24, 2003, Beckee Henk, one of Castro's co-workers, told Likou that she was uncomfortable working with him. (*Id.* ¶¶ 95, 98.) Henk said that Castro called her "his Beckee" and "his girl," made statements like "What's up sexy?," and constantly invaded her personal space. (*Id.* ¶¶ 99-101.)

Defendants Kirk and Likou suspended Castro pending an investigation of Henk's allegations. (*Id.* ¶ 106.) During that investigation, a number of female employees reported that Castro had used inappropriate language or had engaged in inappropriate conduct with his female co-workers. (*Id.* ¶¶ 118-25, 132-33.)

On January 28, 2003, Kirk and Likou terminated Castro's employment for a pattern of inappropriate behavior toward women. (*Id.* ¶ 137.) At the time, Castro was earning more than any other billing specialist in defendants' employ. (*Id.* ¶ 39.)

## Discussion

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). At this juncture, the Court does not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court views all evidence and draws all inferences in favor of the non-moving party.

3

*Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

**Federal Claims**

In Count III of his complaint, plaintiff alleges that defendants violated the Equal Pay Act by paying him less than his female counterparts. To establish a *prima facie* case under the Act, plaintiff must show that: (1) defendants paid different wages to employees of the opposite sex; (2) the employees do equal work which requires equal skill, effort and responsibility; and (3) the employees have similar working conditions. 29 U.S.C. § 206(d)(1); *Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 378 (7th Cir. 1998). "To succeed, a plaintiff must establish, based upon actual job performance and content – not job titles, classifications or descriptions [–] that the work performed is substantially equal." *Fallon v. Ill.*, 882 F.2d 1206, 1208 (7th Cir. 1989) (alterations and citations omitted).

Plaintiff has no evidence to support the first two elements. It is undisputed that only one Total employee, Teresa Kraegler, was paid more than Castro. (*Id.* ¶ 60.) Kraegler, however, was a billing supervisor and had different job duties than Castro. (*Id.* ¶ 61.) Among other things, Kraegler supervised all billing specialists – including Castro – maintained up-to-date billing procedures, participated in inventory control and did budgeting with the accounting department, none of which Castro did. (*Id.* ¶¶ 27-28, 61.) Thus, it is undisputed that Castro and Kraegler did not perform equal work. Because plaintiff has offered no evidence to suggest that defendants paid him less than a female employee who performed substantially equal work, defendants are entitled to summary judgment on the Equal Pay Act claim in Count III.

The Equal Pay Act claim in Count IV suffers the same fate. In that count, plaintiff alleges that defendants violated the statute by paying him less than employees of other races or ethnic backgrounds. The Equal Pay Act, however, only prohibits sex-based wage discrimination. *See* 29 U.S.C. § 206(d)(1). Defendants' motion for summary judgment on Count IV is, therefore, granted.

In Count I of his complaint, plaintiff alleges that defendants violated Title VII by paying female employees more than he, "showing them greater consideration for days off[,] . . . more understanding with their tardiness . . . and pressur[ing] them less than Plaintiff," and terminating him because of his gender. (Compl. ¶ 37.) To defeat defendants' motion on each of these claims, plaintiff must offer either direct or circumstantial proof of sex-based discrimination or use the *McDonnell Douglas* burden-shifting method of proof. *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 272 (7th Cir. 2004). Castro has no direct or circumstantial evidence of discrimination. Thus, he must comply with the burden-shifting method if he is to survive this motion.

To do so, plaintiff must first establish a *prima facie* case of discrimination by providing evidence that suggests: (1) he is a member of a protected class; (2) he was meeting defendants' legitimate performance expectations; (3) he suffered an adverse employment action; and (4) defendants treated him less favorably than a similarly-situated female. *See id.* at 274; *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806 (7th Cir. 1999). If he succeeds in doing so, the burden shifts to the defendants to offer a legitimate nondiscriminatory reason for their action. *Vakharia*, 190 F.3d at 806. If defendants do so, the burden shifts back to plaintiff to present evidence that the proffered reason is pretextual. *Id.* at 807. If plaintiff does not establish a *prima facie* case the inquiry ends, and defendants are entitled to summary judgment. *See Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 612 (7th Cir. 2001).

5

Castro cannot establish a *prima facie* case of sex-based wage discrimination. As noted above, there was only one woman at Total who was paid more than Castro, Teresa Kraegler, and her job duties were materially different than his. (*See* Def.'s LR 56.1(a) Stmt. ¶¶ 27-28, 60-61.) Because Castro and Kraegler were not similarly situated, the second element of the *prima facie* case for this claim is lacking.

Castro fares no better with his termination claim because he has no evidence to support the second or fourth elements of the *prima facie* case. As to the second element, there is no dispute that Castro engaged in a variety of misconduct in the months immediately preceding his termination. In spring 2002, he received repeated warnings for being late to work, which culminated in his suspension for tardiness on September 13, 2002. (Defs.' LR 56.1(a) Stmt. ¶¶ 48, 50-51, 55-56.) He used inappropriate language with his female co-workers, despite his knowledge of the anti-harassment policy and, in November 2002, was verbally warned by Likou to stop doing so. (*Id.* ¶¶ 84-86, 88-90.) Castro did not stop and, on December 23, 2002, Likou gave him a written warning about his language and his use of sexually suggestive gestures. (*Id.* ¶¶ 91-93.) When one of Castro's co-workers complained to Likou about the very same behavior one month later, defendants terminated him. (*Id.* ¶¶ 95-101, 106-08, 137.) Thus, there is no evidence that Castro was meeting defendants' legitimate performance expectations.

There is also no evidence that defendants treated any female employee more favorably. Castro has offered no facts to suggest that defendants allowed any female employee who engaged in the same kind of misconduct to keep her job. Absent such evidence, Castro cannot establish a *prima facie* case that he was terminated because of his gender.

The discriminatory working conditions claim is equally unsupported. Castro has offered no evidence that defendants gave any female employee, similarly situated or otherwise, "greater

consideration for days off, . . . more understanding [for her] tardiness" or more favorable treatment with respect to any other working condition. Because he has not shown that defendants favored any female employee, he has not established a *prima facie* case as to this claim.

In Count II of his complaint, plaintiff alleges that Total discriminated against him on the basis of his ethnic origin by refusing to let him park his car at Likou's home, refusing to let him attend a Hispanic festival, paying him less than non-Hispanic employees and terminating him because he is Hispanic. Once again, Castro has failed to establish a *prima facie* case.

As noted above, there is no evidence to suggest that any similarly situated non-Hispanic employee was paid more than Castro, that any non-Hispanic employee who engaged in the same kind of misconduct kept his or her job or that Castro was meeting defendant's legitimate performance expectations. Thus, he cannot satisfy the second and fourth elements of the *prima facie* case for his wage and termination claims.

Castro's ethnic origin discrimination claims based on the parking and festival restrictions also fail because he cannot establish that either restriction constitutes an adverse employment action. The term adverse employment action refers only to those actions that cause "a *materially adverse* change in the terms or conditions of . . . employment." *Spring v. Sheboygan Sch. Dist.*, 865 F.2d 883, 885 (7th Cir. 1989) (emphasis in original). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993). There is no evidence that the parking restriction or refusal to allow plaintiff to attend the festival impacted his responsibilities, benefits

or pay, or otherwise materially changed the terms or conditions of his employment. Thus, plaintiff has not made a *prima facie* case of discrimination as to these claims.

**State Claims**

In Counts V-VIII, plaintiff asserts state-law claims for slander, intentional infliction of emotional distress and interference. Having dismissed all of the federal claims, the Court declines to exercise its supplemental jurisdiction over the state-law claims. *See* 28 U.S.C. § 1367(c) (stating that district courts may decline to exercise supplemental jurisdiction over state claims if the court "has dismissed all claims over which it has original jurisdiction").

**Conclusion**

For the foregoing reasons, there is no genuine issue of material fact as to any of the federal claims plaintiff asserts against defendants. Defendants' motion for summary judgment [doc. no. 34] on Counts I-IV is, therefore, granted. The Court declines to exercise its supplemental jurisdiction over the state-law claims in Counts V-VIII, which are dismissed without prejudice to refiling in state court. This case is hereby terminated.

**SO ORDERED.**

ENTERED: 9/20/05

HON. RONALD A. GUZMAN
United States District Judge